ROANE, Judge.
This case, viewed in its proper light, is really a very short one; and, as 'I think, a very plain one. It has but two real questions in it: 1. Whether the contract was usurious? 2. Whether the claim is' barred by the statute of limitations?
In order to simplify the case, I may throw out of it some points which are too plain for discussion: As first, whether the mortgage extinguished the bill of exchange? 2. Whether the securities, Brooke and Jiylett, became bound by ■their agreement, to pay 10 per cent, interest, in the event of the bills being or having been protested? As to the first, it is clear that the mortgage recognized the bill of exchange, as an existing' one; and, so far from extinguishing it, creates an additional security for its payment. The bill of exchange, therefore, and not the mortgage, is the contract which determines the rate of interest to be paid, and is the contract really sued upon. As to the second, the general agreement of the parties will extend as well to the nature as to the amount of the debt due from Braxton to Campbell: and the nature of the’ debt due by bill of exchange, *99 determines the rate of interest to be paid by them on protest to be 10 per cent, per annum.
The question of usury is rather more difficult; but I think, nevertheless, is sufficiently clear. I admit that, on questions of this kind we are at liberty to infer usury from the circumstances of the transaction itself. Otherwise, it would be generally impossible to detect it. But, in making this inference, we are confined to the enquiry, whether there is a corrupt contract or agreement for usurious interest? Now, such a contract or agreement pre-supposes the consent of both borrower and lender to this effect; and'without it there is no usurious contract; whatever may be the hopes, wishes, or expectations of either party. Thinking this principle to be almost self-evident, I shall proceed to examine the pi’esent question by it.
The contract, by which Braxton transferred a right to money in Scotland, to Campbell, for a valuable consideration, as evidenced by the bill of exchange, was a lawful contract; and it had the concurrence of both parties thereto. It is no objection to the legality of such contract, that the drawee is a stranger to the drawer; that the latter has no funds in the hands of the former; or that the drawee is in a line of life other than commercial. This contract is for the payment of money in another country, (not in this;) and for the injury arising from a disappointment, the law has allowed an interest of tender cent, per annum; and so far operates as an exception to the general act of usury.
This contract is to be considered as the real contract between the parties,- unless it be subsequently changed, or it has been previously agreed that the bill is not to be paid, but to be protested, and the money paid here. In the last case, the bill would be considered as a shift to evade the statute of usury, and conceal the real agreement of the parties.
However strong the answer of Braxton is to shew an usurious tendency and disposition in Doctor Campbell, as evidenced by the unusual circumstance of his procuring Braxton to draw on a stranger, a clergyman, and a person having no funds of the drawer: Yet, he does not state any consent on his part to waive his right to consider this as a legal bill and to procure it to be honored. He does not-state any agreement on his part, subsequent to the drawing of the bill, that it should not be paid; or any previous agreement that the money was really to be paid here; and, *100 consequently, that the bill is a mere shift to evade the statute.
The question, then, is reduced to this short point: There is a complete agreement of both parties evidenced by the bill of exchange, that the money should be paid in Scotland. There is a hope, an expectation, and even a contrivance in the party, and probably an expectation' in both, that the money should not be paid in that country, but in this; but there is no agreement, carrying this expectation into effect, barring the right of Braxton to consider the contract as a real bill of exchange and to procure a payment in Scotland, and converting the contract into an usurious one.
With respect to the plea of the act of limitations, there is no doubt, that laying out of the case the previous acknowledgments, but the deed of Braxton to Page and White, is an acknowledgment which will prevent its operation. That deed refers to the debt to Campbell as an existing one; and when it speaks of 20001. it is only as being the amount of it as supposed by Campbell’s representatives; and the license of Page and White, of the 14th of April, 1793, to the Sheriff, to sell some of the negroes, recognizes and refers to that mortgage.* I think, therefore, the decree ought to be affirmed.
But, Mr. Randolph asks to correct it. 1. In decreeing that the slaves sold to Adams by Page’s consent should be accounted for. And 2. That liberty should be reserved to the appellee to proceed against the distributees of Brooke’s property.
As to the first, I answer that such of Brooke’s slaves mortgaged to Page and White, as were comprehended in the deed of mortgage from Brooke to Campbell, are now liable to Campbell, by the decree, into whose hands soever they may have come, and that Campbell has no lien upon the slaves not so comprehended, but the lien as to them was only in favor of Page and White, who have released it.
As to the second, that the distributees of Brooke having given or being liable to give bond to the executor to refund, are completely entitled to their distributory shares exempt from any claim, except such as is supported by a specific lien on such property, which in this case is not, I believe, pretended.
*101 FLEMING, Judge. The counsel for the appellant made'three points in this case. 1. They contended that the contract was usurious, and, therefore, void. 2. That the act of limitations applied in favor of the securities. 3. That the nature of the debt was altered, by security being given; from which time the contract was changed, and carried only 5 per cent, interest.
As to the first, I observe, that in order to constitute usury, there must be a borrowing and a lending, with an intent to exact exorbitant interest beyond what is allowed by law, or a forbearance in consideration of such interest being paid. But, there appears no conclusive evidence that such was the case in the contract-now under consideration. There are, indeed, several suspicious circumstances respecting the bill drawn on Young; but it is unnecessary to repeat them, as they are not sufficient, in my mind, to bring the case within the statute of usury.
As to the point of the act of limitations, I think the undertaking of the securities in December, 1775, under seal, excludes them from the benefit of that act; and that Page’s undertaking to stand in the place of Jlylett and to perform every engagement of his (although not under seal,) bound him to abide by every consequence, which was to follow from Jlyleit’s suretyship. In addition to this, Page afterwards accepted a deed of trust from Braxton as an indemnity: which, with the other circumstances just mentioned, certainly removes all pretence for the plea.
With respect to the third point, that the taking of the mortgage for security of the debt, changed the nature of the contract, and made the debt bear five per cent, interest only, it is sufficient to observe, that the consideration of the mortgage expressly is, to secure the re-payment of the money paid■ by the mortgagee for a set of bills of exchange therein described, if they should be protested; which, in that case would by law carry an interest of 10 per cent, per annum. So, that Campbell’s accepting the mortgage, did not change the nature of the debt, but was considered merely as an auxiliary security for the payment.
Mr. Randolph thought there was error in the decree, in not allowing the appellee to proceed against the legatees of Mr. Brooke for the slaves in their possession, and to pursue the mortgaged slaves purchased by Mams. But, besides the answer already given to these objections, it is sufficient to observe that those parties are not before the *102 Court, and, consequently, we can make no decision affectjng them. I am, therefore, for affirming the decree altogether.
CARRINGTON, Judge. Three exceptions have been taken to the decree of the Court of Chancery in this cause. 1. That the contract was usurious and void. 2. That the plaintiff’s'claim was barred by the statute of limitations. 3. That the ten per cent, ceased on taking the mortgage, and that only five per cent, could be demanded after that period.
As to the first, it is said, that the contract is usurious, and, therefore, void. But, to constitute usury, there must be a loan or forbearance; and there are no features of either discoverable in this cause. Braxton, in his answer, calls the transaction a sale and purchase of two bonds, for which the bills in question were drawn; and, although he aftervrards speaks of them as a loan, yet from the nature of the thing in question, (namely bonds,) they could not have, been intended.to be returned: Because, in that case, they would have been of no use to the borrower; who contracted for them for the purpose of negotiating them in payment of his debts to others; and they were certainly drawn as a consideration for the purchase. As to the shift, which has been alledged, it is possible, that the intention of Campbell was to make greater profit than five per cent.; but such intention is not proved. Braxton, indeed, states it in his answer; but, the answer is not responsive to the bill, and is unsupported by testimony. Besides, although Braxton states that to have been Campbell’s intention, he does not say that he himself consented to it, which was necessary to form the contract between them. In short, I discover no trace in the transaction, so conclusive as to justify me in criminating Campbell, and depriving his representatives of their debt. For, there is nothing in the case out of the usual course of that kind of business; which was thus, the debtor drew bills of exchange payable to his creditor, but, in case of the possibility of nonacceptance, an endorser was generally required. In the present case, however, in lieu of an endorser, Braxton conveyed an estate as a security for the large bill on Young. In this view, it was a fair transaction and not justly liable to any objection. But, added to this, Braxton’s defence is materially weakened by his lying quiet so long, and making considerable payments, without any complaint.
*103 Upon the whole, I consider the case as not coming within the statute of usury; and, that the security taken was intended to strengthen and not injure the plaintiffs’ legal rights under the bills of exchange.
The second exception was, that the claim is barred by the act of limitations. But, there is no ground for the objection; because the claim has been preserved from the operation of that act, by various transactions down to the year 1792, when the suit was brought.
The third exception taken by the appellant’s counsel, has been already anticipated; and I shall only add that I think there is no weight in it.
As to the correction's asked for by the appellee’s counsel, it is sufficient to observe that Brooke’s representatives are not before the Court, and, therefore, we can make no decree against them.
Upon the whole, I concur in opinion with the other Judges, that the decree was pronounced on just principles, and ought to be affirmed.

[* See Mountstephen et al. v. Brooke et al. 3 Barn.and Ald. 141.]